CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division
ELIANIS N. PÉREZ
Assistant Director
NICOLE P. GRANT
Senior Litigation Counsel
AYSHA T. IQBAL
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>1. STATE OF OKLAHOMA,<br><br>            Defendant. | CIVIL No.  CIV-25-265-DES<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

1

## INTRODUCTION

Federal law prohibits aliens not lawfully present in the United States from getting in-state tuition benefits that are denied to out-of-state U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Oklahoma Statutes, Title ("Okla. Stat., tit.") 70, § 3242 extends eligibility for in-state tuition benefits at state postsecondary educational institutions to individuals who are not lawfully present in the United States, while requiring U.S. citizens from other states to pay higher tuition rates. This unequal treatment of Americans is squarely prohibited and preempted by federal law, which expressly provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added).

Okla. Stat., tit. 70, § 3242 is thus unconstitutional under the Supremacy Clause of the U.S. Constitution, and this Court should declare it illegal and permanently enjoin its enforcement.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendant resides within the Eastern District of Oklahoma and because Defendant's acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

3. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4. Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Justice ("DOJ"), Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Customs and Border Protection ("CBP").

5. Defendant State of Oklahoma is a state of the United States.

## FEDERAL LAW

6. The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1 and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

7. The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the Constitution, numerous acts of Congress, and binding Supreme Court precedent.

8. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

9.  On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*[1], ordering federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]"

10. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*[2], ordering relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

11. These Orders emphasize that federal and state governments must not grant greater benefits to individuals who are unlawfully present in the United States than to American citizens. They also reflect Congress's intent—expressed in multiple provisions of the Immigration and Nationality Act ("INA")—to reduce incentives for illegal immigration by limiting access to certain public benefits.

12. Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). A key objective of

---

[1] Executive Order, Ending Taxpayer Subsidization of Open Borders, 90 Fed. Reg. 10581 (Feb. 19, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/02/ending-taxpayer-subsidization-of-open-borders/ (last visited Aug. 4, 2025).

[2] Executive Order, Protecting American Communities From Criminal Aliens, 90 Fed. Reg. 18761 (Apr. 28, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/ (last visited Aug. 4, 2025).

these Acts was to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for unlawful immigration. *See id*.; *see also* 8 U.S.C. § 1601 (Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.).

13. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

14. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

15. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

16. As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

17. Even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to individuals who are unlawfully present in the United States based solely on their residence in the state, if those same benefits are denied to U.S. citizens from other states. IIRIRA included a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence

within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

18. Accordingly, under 8 U.S.C. § 1623(a), individuals who are unlawfully present in the United States are not eligible for in-state tuition based on state residency unless that same tuition rate is offered to all U.S. citizens, regardless of their state of residence.

## RELEVANT OKLAHOMA LAWS

19. In 2007, the Oklahoma legislature amended Okla. Stat., tit. 70, § 3242 (also known as HB1804 of the First Regular Session of the 51st Legislature) to provide that the Oklahoma State Regents for Higher Education ("OSRHE"), the coordinating board of control for the 25 state colleges and universities in The Oklahoma State System of Higher Education (State System),[3] "may adopt" a policy which allows students to be eligible for enrollment and resident tuition in an institution within the State System if the student: 1) graduated from a high school in the state; and 2) resided in the state with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation. Okla. Stat., tit. 70, § 3242.A.

20. If such a student has secured admission to, and enrolled in, an institution within the State System, but cannot present valid documentation of United States nationality or an immigration status permitting study at a postsecondary institution, the student remains eligible for resident tuition if the student also: 1) provides to the institution a copy of a true and correct application or petition filed with the USCIS to legalize the student's immigration status; or 2) files

---

[3] Okla. Const. art. 13A; Okla. Stat., tit. 70, § 3206; *see* About the State System of Higher Education, What We Do, available at https://okhighered.org/state-system/ (last visited Aug. 4, 2025).

with the institution an affidavit of intent to legalize his or her immigration status at the earliest opportunity the student is eligible to do so. Okla. Stat., tit. 70, § 3242.B.

### OSRHE'S POLICY FOR DETERMINING IN-STATE/OUT-OF-STATE STATUS

21.     Pursuant to Okla. Stat., tit. 70, § 3242, OSRHE has adopted a policy that establishes criteria and guidelines for classifying postsecondary students as in-state or out-of-state students for the purpose of assessing tuition rates. *See* OSRHE Policy and Procedures Manual, § 3.18, In-State/Out-of-State Status of Enrolled Students ("OSRHE Policy").[4] OSRHE sets resident tuition rates significantly lower than nonresident tuition rates.[5]

22.     Oklahoma's postsecondary education institutions are responsible for determining students' in-state and out-of-state status consistent with OSRHE's policy. OSRHE Policy § 3.18.2.

23.     An individual seeking in-state status for purposes of assessing resident tuition bears the burden of proof. *Id.* OSRHE requires State System educational institutions to establish procedures for students to appeal out-of-state status classifications. OSRHE Policy § 3.18.2.G.

24.     OSRHE's Policy provides that unless residency has been established in another state, a person "who resided in Oklahoma at the time of graduation from an Oklahoma high school and has resided in the state with a parent or legal guardian for two years prior to graduation from high school will be eligible for in-state status[.]" OSRHE Policy § 3.18.2.E.[6]

---

[4] Available at https://okhighered.org/state-system/policy-procedures/ (last visited Aug. 4, 2025).
[5] *See* FY 2023-2024 Tuition and Fee Rates, The Oklahoma State System of Higher Education, available at https://okhighered.org/wp-content/uploads/2023/10/tuition-fees-23-24.pdf (last visited Aug. 4, 2025) (reflecting that tuition amounts for residents in Oklahoma postsecondary educational institutions were significantly lower than they were for nonresidents).
[6] Generally, OSRHE states that "[a] resident of Oklahoma is someone who has lived continuously for at least 12 months and whose domicile is in Oklahoma. It is the place where he or she intends to remain." "Domicile has two components—residence and intention to remain." OSRHE Policy § 3.18.2.E.

25. Under OSRHE Policy, an illegal alien student from Oklahoma who meets the requirements of Okla. Stat., tit. 70, § 3242 is eligible to receive a waiver of nonresident tuition—i.e., a waiver of a portion of the out-of-state tuition that does not exceed the difference between out-of-state tuition and the amount paid by in-state students. OSRHE Policy §§ 3.18.6, 4.15.4.C.

26. Further, under OSRHE Policy, an illegal alien student who provides a State System institution "with a copy of a true and correct application or petition filed with USCIS to legalize the student's immigration status shall not be disqualified on the basis of the student's immigration status from any scholarships or financial aid provided by the state" as long as the individual resided in Oklahoma at the time of graduation from an Oklahoma high school, has resided in the state with a parent or legal guardian for two years prior to graduation from high school, and satisfies admission standards for the institution. OSRHE Policy § 3.18.6.C.

27. Unless a state educational institution grants a waiver of nonresident tuition (for example, as part of a scholarship), Oklahoma denies reduced resident tuition rates to U.S. citizens who do not meet Oklahoma's residency requirements. *See* Okla. Stat., tit. 70, § 3226; OSRHE Policy § 3.18.2.H.

28. This benefit is implemented through OSRHE policy which closely mirrors its enabling Oklahoma statute, in violation of 8 U.S.C. § 1621(d).

29. This treatment of illegal alien students stands in stark contrast to how OSRHE Policy treats both U.S. citizens from outside Oklahoma and documented foreign nationals residing in the state. Under the policy, documented foreign nationals on valid educational visas are eligible for in-state tuition only if they become lawful permanent residents, have lived in Oklahoma for at least 12 consecutive months, and satisfy the domicile requirements set by OSRHE. *See* OSRHE Policy § 3.18.4. Documented foreign nationals with full-time employment visas and their lawfully

8

present dependents are eligible for out-of-state tuition waivers "as long as they remain in full-time working status." *Id.*

30. Therefore, aliens not lawfully present in the United States who satisfy OSRHE Policy criteria are eligible for reduced tuition benefits, whereas lawfully present nonimmigrants must either obtain permanent resident status or maintain their visas and meet additional requirements to qualify for out-of-state tuition waivers. *See, e.g.*, 8 U.S.C. §§ 1182(a)(6)(A)(i), (7)(A)(i) (rendering inadmissible and subject to removal aliens who are present in the United States without lawful admission or documentation); *see also* 8 U.S.C. § 1229a(a)(2) (providing that such aliens may be placed in removal proceedings based on their inadmissibility).

## THE OKLAHOMA PROVISION IS PREEMPTED

31. The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

32. Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

33. Federal statutes may expressly preempt state laws and render them ineffective by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."); *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) ("Express preemption applies

where Congress, through a statute's express language, declares its intent to displace state law.") (citation omitted).

34. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *United States v. Zheng*, 87 F.4th 336, 344 (6th Cir. 2023) ("'When Congress clearly expresses its intent to repeal or to pre-empt, we must respect that expression.'") (citing *Branch v. Smith*, 538 U.S. 254, 285 (2003) (Stevens, J., concurring in part and in the judgment)).

35. When the federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Further, the "'ultimate touchstone' of preemptive effect is Congress's purpose." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001); *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) (stating that "[t]he purpose of Congress is the ultimate touchstone" of preemption analysis) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

36. Here, federal law, 8 U.S.C. § 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such

a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

37.     As indicated by its title—'Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits'—§ 1623(a) mandates that all U.S. citizens must be eligible for a benefit regardless of residency before any alien not lawfully present in the United States can receive that benefit based on residency

38.     At least three courts have found that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 312–13 (5th Cir. 2023); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit."); *Foss v. Arizona Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . .").

39.     Therefore, the federal statute, 8 U.S.C. § 1623(a), expressly preempts Okla. Stat., tit. 70, § 3242 because it bestows greater postsecondary education benefits on aliens not lawfully present in the United States than U.S. citizens. Okla. Stat., tit. 70, § 3242 is therefore unconstitutional.

### CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

40.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

41. The challenged provisions, Okla. Stat., tit. 70, § 3242 and OSRHE Policy § 3.18.6., violate federal immigration law. They directly conflict with federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens regardless of residency. 8 U.S.C. § 1623(a).

42. Further, by enabling OSRHE to adopt the challenged policy rather than enacting it by statute, Oklahoma violates federal immigration law's requirement that a state can only provide eligibility for certain benefits to aliens not lawfully present in the United States through "the enactment of a State law" that "affirmatively provides for such eligibility." *Id.* § 1621(d).

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. that this Court enter a judgment declaring that the challenged provision violates the Supremacy Clause and is therefore unconstitutional and invalid;

2. that this Court issue a permanent injunction that prohibits Defendant as well as its successors, agents, and employees, from enforcing the challenged provision,

3. that this Court award the United States its costs and fees in this action; and

4. that this Court award any other relief it deems just and proper.

DATED: August 5, 2025                                            Respectfully submitted,

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI                                               */s/ Elianis N. Perez*
Deputy Associate Attorney General                                ELIANIS N. PÉREZ
                                                                 Assistant Director
BRETT A. SHUMATE                                                 Email: Elianis.Perez@usdoj.gov
Assistant Attorney General                                       Attorney for the Plaintiff
                                                                 United States Department of Justice
YAAKOV M. ROTH                                                   Office of Immigration Litigation
Principal Deputy Assistant Attorney General                      General Litigation and Appeals Section
                                                                 Civil Division
SEAN SKEDZIELEWSKI                                               P.O. Box 868, Ben Franklin Station
Counsel to the Assistant Attorney General                        Washington, D.C. 20044
                                                                 Telephone: (202) 616-9124
                                                                 Fax: (202) 305-7000

                                                                 NICOLE P. GRANT
                                                                 Senior Litigation Counsel
                                                                 AYSHA T. IQBAL
                                                                 Trial Attorney

                                                                 *Attorneys for the United States*