UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF OKLAHOMA,<br><br>Defendant,<br><br>and<br><br>OKLAHOMA STUDENTS FOR AFFORDABLE TUITION<br><br>Defendant-Intervenor. | Case No.: 6:25-cv-00265-RAW-DES |

**OKLAHOMA STUDENTS FOR AFFORDABLE TUITION'S OPPOSED MOTION TO INTERVENE AND BRIEF IN SUPPORT**

Under Federal Rule of Civil Procedure 24(a), Oklahoma Students for Affordable Tuition respectfully moves the Court to allow it to intervene in this civil action. As explained in the accompanying brief in support of this motion, Oklahoma Students for Affordable Tuition is entitled to intervene in this action as a matter of right under Fed. R. Civ. P. 24(a) because it has as significant interest in the continued validity of Oklahoma's provision of regular tuition rates for undocumented college and university students. In the alternative, Oklahoma Students for Affordable Tuition asks the Court to grant it permissive intervention under Fed. R. Civ. P. 24(b). Oklahoma Students for Affordable Tuition seeks to intervene in this matter for purposes of an appeal because Defendant State of Oklahoma will not appeal. Attached is Oklahoma Students for Affordable Tuition's Proposed Answer and Crossclaims. *See* Exhibit A.

For these reasons, Oklahoma Students for Affordable Tuition asks the Court to grant it the right to intervene in this action.

Dated: October 27, 2025					Respectfully submitted,

						_____/s/ Marvin Lizama_____
						Marvin Lizama (Oklahoma Bar. No. 21266)
						**Lizama Law, PLLC**
						907 S. Detroit Avenue, Suite 1330
						Tulsa, OK 74120
						918-850-2048
						marvin@lizamalaw.com


						____/s/ Fernando Nuñez_____
						Thomas A. Saenz (California Bar No. 159430)+
						Fernando Nuñez (California Bar No. 327390)*
						Luis L. Lozada (California Bar No. 344357)*
						**MEXICAN AMERICAN LEGAL DEFENSE
						AND EDUCATIONAL FUND**
						634 South Spring Street, 11th floor
						Los Angeles, CA 90014
						Facsimile: (213) 629-0266
						Email: tsaenz@maldef.org
						        fnunez@maldef.org
						        llozada@maldef.org

						*Attorneys for Oklahoma Students for
						Affordable Tuition*

						+ *Admission pending*
						*Pro Hac Vice Forthcoming*

## CERTIFICATE OF CONFERENCE

On October 24, 2025, Oklahoma Students for Affordable Tuition's counsel met and conferred with counsel for Defendant State of Oklahoma telephonically due to the distance between counsel. On October 27, 2025, Oklahoma Students for Affordable Tuition's counsel met and conferred with counsel for Plaintiff United States of America telephonically due to the distance between counsel.  Specifically, Oklahoma Students for Affordable Tuition counsel conferred with the following counsel: Garry Gaskins, Counsel for Defendant, and Elianis Perez, Counsel for Plaintiff.  An accord was not reached regarding Oklahoma Students for Affordable Tuition's Motion to Intervene.  Counsels for Plaintiff and Defendant oppose Oklahoma Students for Affordable Tuition's intervention.

Dated: October 27, 2025

Respectfully submitted,

   */s/ Marvin Lizama*
Marvin Lizama (Oklahoma Bar. No. 21266)
**Lizama Law, PLLC**
907 S. Detroit Avenue, Suite 1330
Tulsa, OK 74120
918-850-2048
marvin@lizamalaw.com

   /s/ Fernando Nuñez
Thomas A. Saenz (California Bar No. 159430)+
Fernando Nuñez (California Bar No. 327390)*
Luis L. Lozada (California Bar No. 344357)*
**MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
       fnunez@maldef.org
       llozada@maldef.org

*Attorneys for Oklahoma Students for Affordable Tuition*

*+ Admission pending*
*\*Pro Hac Vice Forthcoming*

**OKLAHOMA STUDENTS FOR AFFORDABLE TUITION'S BRIEF IN SUPPORT OF ITS OPPOSED MOTION TO INTERVENE**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION………………………………………………………….………………1

II. BACKGROUND……………………………………………………………………….......2

    A. Statutory History…………………………………………………………………….…..2

    B. This Action………………………….……….......………………………………...….3

    C. Movant Oklahoma Students for Affordable Tuition..……………….….…………...…4

III. ARGUMENT…………………………………………………………………………….6

    A. OSAT is Entitled to Intervene as a Right………………………………………….…..6

        1. OSAT's Motion to Intervene is Timely………………………………………………6

        2. OSAT Has a Strong Interest in This Action…………………………………………9

        3. Disposition of the Case Will Impair OSAT's Interests………………...……....10

        4. The Existing Parties Do Not Adequately Represent OSAT's Interests……………..11

    B. Permissive Intervention……………………………………………………………..11

IV. CONCLUSION………………………………………………………….……………......12

# **TABLE OF AUTHORITIES**

Cases                                                                                                              Page(s)

*Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*,
   100 F.3d 837 (10th Cir. 1996) ............................................................................................. 9
*Forest Guardians v. U.S. Dept. of Interior*,
   2004 WL 3426413 (D.N.M. Jan. 12, 2004) ..................................................................... 9, 12
*Okla. ex. rel. Edmondson v. Tyson Foods, Inc.*,
   619 F.3d 1223 (10th Cir. 2010) ............................................................................................. 7
*United States v. Albert Inv. Co., Inc.*,
   585 F.3d 1386 (10th Cir. 2009) ................................................................................... 6, 9, 10
*Utah Ass'n of Ctys. v. Clinton*,
   255 F.3d 1246 (10th Cir. 2001) ............................................................................... 6, 7, 9, 11
*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
   295 F.3d 1111 (10th Cir. 2002) ............................................................................................. 9
*W. Energy All. v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) ....................................................................................... 6, 10
*WildEarth Guardians v. U.S. Forest Serv.*,
   573 F.3d 992 (10th Cir. 2009) ........................................................................................ 10, 11

Statutes

8 U.S.C. § 1623(a) ................................................................................................................... 2, 3
Okla. Stat. Title 70, § 3242 ............................................................................................... 1, 2, 3, 4
Okla. Stat. Title 70, § 3242(A) ..................................................................................................... 3
Okla. Stat. Title 70, § 3242(B)(2)(a)–(c) .................................................................................. 3, 4

Rules

Fed. R. App. P. 4(a)(B)(i) ............................................................................................................. 7
Fed. R. Civ. P. 24 ........................................................................................................................ 10
Fed. R. Civ. P. 24(a) ............................................................................................................ Passim
Fed. R. Civ. P. 24(a)(2) ................................................................................................................. 6
Fed. R. Civ. P. 24(b) ............................................................................................................ Passim
Fed. R. Civ. P. 72(b)(2) ................................................................................................................ 4

Other Authorities

Oklahoma Senate Bill 596 ............................................................................................................ 2

Oklahoma Students for Affordable Tuition submits this brief in support of its Opposed Motion to Intervene.

## I.　INTRODUCTION

Plaintiff United States of America and Defendant State Oklahoma (collectively, "the Parties") agreed in an expedited fashion to invalidate Oklahoma Statutes, Title 70, § 3242, and Oklahoma State Regents for Higher Education Policy § 3.18.6 (collectively, "the challenged provisions")—long-standing, duly enacted state law that allowed eligible students without lawful immigration status to pay tuition equivalent to the rate paid by most students ("regular tuition rates") at public colleges and universities in Oklahoma. In doing so, they asked the Court to upend the lives of students in Oklahoma who have been seeking higher education in Oklahoma based on a legislated promise that they would pay regular tuition rates. The Parties did not fully apprise the Court of the irreparable consequences to third parties nor did they provide adversarial briefing that would ensure a fully informed decision by this Court.

This action is a continuation of the United States' efforts to make the pursuit of public education for undocumented young people excessively burdensome, if not entirely unattainable, across the country. Indeed, though no other administration of either party has challenged such laws in nearly a quarter century of their existence, the United States has filed similar lawsuits to end longstanding tuition laws in Texas, Kentucky, Minnesota, and Illinois in 2025. Although some of those states have defended their own laws, others like Oklahoma, have capitulated, resulting in immediate and dire consequences for the many students attending their public colleges and universities.

Oklahoma Students for Affordable Tuition (hereinafter, "OSAT" or "Movant") is a group of students affected by Oklahoma's failure to defend its own laws. It is an unincorporated

association comprised of college students without lawful immigration status who are united for the purpose of advocating for access to affordable higher education in Oklahoma, including maintaining the state's regular tuition rates for Oklahoma students without lawful immigration status. The fast pace at which this action was resolved prevented Movant from intervening in the action before the Court entered final judgment. Nevertheless, Movant is seeking intervention at the earliest practicable time.

Movant seeks intervention as a matter of right under Federal Rule of Civil Procedure 24(a) to appeal the Court's August 29, 2025 Order and defend the validity of the challenged state-law provisions. In the alternative, Movant respectfully requests permissive intervention under Fed. R. Civ. P. 24(b), as its claims and defenses share common questions of law and fact with the main action, and its intervention on behalf of third parties affected by this litigation will significantly contribute to the just and equitable resolution of the important issues at stake. Movant also crossclaims against the State of Oklahoma for improper retroactivity and violations of due process.

Accordingly, Movant respectfully requests that the Court grant its motion to intervene.

## II.   BACKGROUND

### A.  Statutory History

In 1996, the United States Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act. Among numerous other provisions, the Act states in relevant part:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). In 2003, and presumably aware of the 1996 federal law, Oklahoma enacted Senate Bill 596, which amended the Oklahoma Statutes, Title 70. *See* Okla. Stat. Title 70, § 3242.

Specifically, the Oklahoma legislature mandated that the Oklahoma State Regents for Higher Education ("OSRHE") the adopt a policy that allows immigrant students to be eligible for regular tuition if they (1) graduated from a public or private high school in the state; and (2) resided in the state with a parent or legal guardian while attending classes at a public or private high school in this state for at least two (2) years prior to graduation. *See* Okla. Stat. Title 70, § 3242(A).[1] The Oklahoma legislature also required students without lawful immigration status to "(a) provide to the institution a copy of a true and correct application or petition filed with the United States Citizenship and Immigration Services to legalize the student's immigration status, or (b) file an affidavit with the institution stating that the student will file an application to legalize his or her immigration status at the earliest opportunity the student is eligible to do so" within a specific timeframe and provide a copy of their application within that timeframe. Okla. Stat. Title 70, § 3242(B)(2)(a)–(c). Following the directive by the Oklahoma legislature, OSRHE adopted a policy soon after that that closely mirrors the enabling statute. *Compare* Okla. Stat. Title 70, § 3242 *with* OSRHE Policy § 3.18.6. These challenged provisions have allowed students to afford a higher education in Oklahoma for more than two decades regardless of their immigration status.

**B. This Action**

On August 5, 2025, the United States filed this lawsuit against the State of Oklahoma seeking to prohibit students without lawful immigration status from paying regular tuition rates at public colleges and universities in Oklahoma. *See* Dkt. 2. Specifically, the United States alleges that the challenged provisions are expressly preempted by 8 U.S.C. §§ 1623(a), 1621(d). *See id.* at 9–11. That same day—instead of defending its own law—the State of Oklahoma joined the

---

[1] The Oklahoma legislature amended Okla. Stat. Title 70, § 3242 in 2007, which, among other things, made the adoption of a policy optional.

United States in filing a Joint Motion for Entry of Consent Judgment. *See* Dkt. 9. The Parties asked the Court to "enter a final judgment declaring that Okla. Stat. Title 70, § 3242 and OSRHE Policy § 3.18.6 violate the Supremacy Clause and are therefore invalid." *Id.* at 2. The Parties further requested that the Court "enter a permanent injunction prohibiting the [State of Oklahoma] . . . from enforcing Okla. Stat., tit. 70, § 3242 and OSRHE Policy § 3.18.6." *Id.*

On August 7, 2025, without holding a hearing, Magistrate Judge D. Edward Snow issued a Report and Recommendation in which he accepted the legal conclusions offered by the Parties and recommended that the District Court grant the Parties' Joint Motion for Entry of Consent Judgment, and enter the proposed order. *See* Dkt. 11 at 3. Magistrate Judge Snow provided three days to file any objections rather than the usual 14 days provided by Federal Rule of Civil Procedure 72(b)(2). *See id.* On August 29, 2025, the Court adopted the Report and Recommendation in full and entered an Order and Final Consent Judgment. *See* Dkts. 22, 23. The Court declared that the challenged provisions, Oklahoma Statutes, Title 70, § 3242, and OSRHE § 3.18.6, "as applied to aliens who are not lawfully present in the United States, violate[] the Supremacy Clause and are unconstitutional and invalid." Dkt. 23. The Court also permanently enjoined the State of Oklahoma from enforcing Oklahoma Statutes, Title 70, § 3242, and OSRHE § 3.18.6, "as applied to aliens who are not lawfully present in the United States." *Id.*

### C. Movant Oklahoma Students for Affordable Tuition

OSAT is an unincorporated association whose members reside and attend public colleges and universities in Oklahoma. It is comprised of students without lawful immigration status who have lived in Oklahoma since childhood and rely on paying regular tuition rates to afford college in the state. OSAT exists for the purpose of promoting, advocating for, and ensuring access to affordable higher education in Oklahoma, including maintaining regular tuition rates for certain

4

students without lawful immigration status. OSAT's members decided to pursue higher education in Oklahoma in reliance on the guarantees from the State of Oklahoma that they would qualify for regular tuition rates. This lawsuit, resulting in the entry of the final consent judgment, eliminated those guarantees and subjects OSAT's members to substantial increases of their education costs with no prior adequate warning. The increase in tuition threatens to prevent them from completing their programs.

For example, one of OSAT's members is a student without lawful immigration status pursuing a Bachelor of Business Administration degree at the University of Oklahoma. He is in his third year and planned to become an accountant in Oklahoma after graduation. He relied on paying regular tuition rates when he decided to attend the University of Oklahoma. He has paid for his education out of pocket and through private scholarships. As a result of the final judgment, he must now suddenly pay more than double his regular tuition if he wants to continue his program. He is facing significant financial hardship to complete this semester and will almost certainly drop out of his program if he is forced to pay out-of-state tuition rates in the future.

Another OSAT member is a student without lawful immigration status pursuing a Bachelor of Architectural Engineering degree at Oklahoma State University. He is in the final year of his program. He relied on paying regular tuition rates when he decided to attend Oklahoma State University. He pays for his education out of pocket, without grants or loans. As a result of the final judgment, Oklahoma State imposed an additional tuition charge of approximately $7,800—more than doubling his tuition for this semester. He cannot afford to pay the additional amount and will likely have to defer completing his program.

A third OSAT member is a fourth-year student without lawful immigration status pursuing a Bachelor of Business Administration degree at Oklahoma State University. She relied on paying

5

regular tuition rates when she decided to attend that school. She has been paying for her tuition out of pocket and through small contributions from her parents. However, because of the final judgment, she is forced to pay an approximately $7,000 in additional tuition that she did not expect to pay this semester. She cannot afford the increase and is seeking a high-interest loan so that she can complete her program. If she cannot get a loan, she will have to drop out of her program.

### III.   ARGUMENT

OSAT seeks intervention as a matter of right under Fed. R. Civ. P. 24(a) or, in the alternative, permissive intervention under Fed. R. Civ. P. 24(b). OSAT seeks intervention to appeal the Court's final judgment entered on August 29, 2025. *See* Dkt. 23.

#### A.  OSAT Is Entitled to Intervene as of Right

The Tenth Circuit has summarized the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) as follows: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is [not] adequately represented by existing parties." *United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (internal quotation marks and citations omitted). The Tenth Circuit has "historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (internal quotation marks omitted). OSAT satisfies each of these requirements, and the unique circumstances of this action warrant granting intervention as of right.

#### 1.  OSAT's Motion to Intervene is Timely

Courts weigh various factors "in light of all of the circumstances" in evaluating the timeliness of a motion to intervene. *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir.

2001). Three non-exhaustive factors that are "particularly important" are (1) the length of time since the movant knew of its interest in the case, (2) prejudice to the existing parties, and (3) prejudice to the movant. *See Okla. ex. rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (citation omitted). Courts should also consider any unusual circumstances. *See id.* "The analysis is contextual; absolute measures of timeliness should be ignored." *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (citation omitted). OSAT's motion is timely in the context of this case.

Regarding the first factor, OSAT became aware of its interest in this case when its members began getting notices from their colleges and universities in or around late September that—as a consequence of the Court's final judgment—they must pay thousands more in tuition to remain enrolled in their current academic term. OSAT subsequently acted diligently and promptly to protect its interests by retaining counsel and seeking intervention. There is no undue delay, gamesmanship, or strategic maneuvering that would render OSAT's motion to intervene untimely. *See Tyson Foods, Inc.*, 619 F.3d at 1235 ("[D]elay in itself does not make a request for intervention untimely."). Thus, the short period between OSAT's discovery of its interest and the motion to intervene strongly support a finding of timeliness.

Regarding the second factor, the inquiry "measures prejudice caused by the intervenors' delay—not the intervention itself." *Utah Ass'n of Ctys.*, 255 F.3d at 1251 (internal quotations and citation omitted). There is no prejudice to the Plaintiff United States or Defendant State of Oklahoma by OSAT filing this motion to intervene for purposes of appeal less than three months after Plaintiff filed this suit—and within the time to file a notice of appeal. *See* Fed. R. App. P. 4(a)(B)(i). The Parties cannot reasonably claim any prejudice regarding the timing of the intervention in this case after they decided to seek the invalidation of long-standing Oklahoma laws in one day through an agreed judgment. Any prejudice to the Parties would not result from

7

OSAT's intervention, but rather from the Parties' decision to rush this Court into entering their proposed consent judgment without consideration of the interests of third parties.

Third, OSAT will be significantly prejudiced if the Court denies intervention. Because the Court has declared the challenged provisions unconstitutional and permanently enjoined Defendant from enforcing them, OSAT members have already suffered injury—and will continue to suffer injury unless OSAT can obtain relief. Specifically, OSAT's members are now required to pay higher out-of-state tuition rates instead of the regular tuition rates they relied upon when they decided to attend college in Oklahoma. Because Defendant consented to the entry of judgment, it will not file an appeal, meaning that absent OSAT's appeal, the Court's final judgment will be the final say in the matter and will render the injuries permanent.

Finally, the circumstances of this action are unusual and strongly support a finding of timeliness. As previously noted, the Parties asked this Court to enter a final consent judgment to invalidate long-standing Oklahoma laws the same day the case was filed and without the benefit of a hearing or an opportunity for affected third parties to be heard. *See* Dkts. 2, 9. Further, this case was filed as part of Plaintiff's campaign to file similar lawsuits across the country to invalidate state laws and regulations that allow certain students without lawful immigration status to pay regular tuition rates. *See, e.g., United States v. Texas*, No. 7:25-cv-00055 (N.D. Tex.); *United States v. Walz et al.*, No. 0:25-cv-02668 (D. Minn.); *United States v. Beshear et al.*, No. 3:25-cv-00028 (E.D. Ky.). The importance of the constitutional issue being determined by courts in different circuits warrants a finding of timeliness so that the Court and the Tenth Circuit benefit from adversarial briefing to further inform their decisions.

Accordingly, OSAT's motion is timely.

///

## 2. OSAT Has a Strong Interest in This Action

To satisfy the second requirement, a movant must claim "an interest relating to the property or transaction which is the subject of the action." *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (internal quotation marks omitted). They must demonstrate a "direct, substantial and legally protectable interest in the subject matter of the action." *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 839 (10th Cir. 1996). The Tenth Circuit has noted that this inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utah Ass'n of Ctys.*, 255 F.3d at 1251–52 (citing *Coal. of Arizona/New Mexico Ctys. For Stable Econ. Growth*, 100 F.3d at 841). "The threshold for finding the requisite legal protectable interest is not high." *Forest Guardians v. U.S. Dept. of Interior*, No. CIV-02-1003 JB/WDS, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004).

Here, OSAT is comprised of students who are directly and adversely affected by the Court's final judgment. Students without lawful immigration status in Oklahoma—such as OSAT's members—face severe financial hardship now that they must pay out-of-state tuition rates after relying on regular tuition rates for years. *See Supra* Section II.C. OSAT's members, like many students without lawful immigration status, come from low-income backgrounds and are not eligible for federal financial aid. That makes paying for out-of-state tuition particularly difficult. If they are forced to pay out-of-state tuition, OSAT members may be forced to drop out of their educational programs after investing years of study and substantial financial resources. *See Supra* Section II.C. These injuries are direct consequences of the Court's final consent judgment. The Tenth Circuit has held that "[a]n interest in preventing an economic injury is certainly sufficient for intervention as of right." *Albert Inv. Co., Inc.*, 585 F.3d at 1398; *see also Utahns for Better*

*Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."). Accordingly, Movant has a direct and substantial interest in this action to support intervention.

### 3. Disposition of the Case Will Impair OSAT's Interests

To satisfy the third requirement, a movant must demonstrate that disposition of the action may impair its ability to protect its interest. *See Albert Inv. Co., Inc.*, 585 F.3d at 1391. "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (emphasis added) (internal quotations marks omitted). This burden is minimal. *See id.*; *see also Zinke*, 877 F.3d at 1167 (discussing that the movant need only show that it is "possible" that its interests will be impaired). The advisory committee notes to Rule 24(a) are also instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Comm. Note to 1996 Amend.

There is no doubt that the disposition of this case will directly impair OSAT's interests. In fact, it has already manifested in harms to OSAT's members by way of significant increases to their tuition for the current academic term. *See Supra* Section II.C. If no party seeks an appeal, the Court's final judgment will be the final word and will cement OSAT's injuries indefinitely. As previously stated, if students without lawful immigration status are required to pay higher out-of-state tuition rates, many of them will be unable to afford the cost of attendance and will be forced to drop out.

Accordingly, OSAT satisfies the third prong for intervention as of right.

///

### 4. The Existing Parties Do Not Adequately Represent OSAT's Interests

In seeking intervention, the movant has the burden of demonstrating inadequate representation, but this burden is minimal; "[t]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *WildEarth Guardians*, 573 F.3d at 996 (internal quotation marks omitted). "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation." *Utah Ass'n of Ctys.*, 255 F.3d at 1255. However, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. *Id.*

Here, Defendant State of Oklahoma failed to represent OSAT's interests when it willingly entered into an expedited agreement to have its own laws declared unconstitutional and to be enjoined from enforcing them. *See* Dkt. 9. Defendant also did nothing to inform this Court of the devastating effect on third parties, such as OSAT's members, or the federalism issues that the Court's final judgment present. Defendant cannot represent OSAT's interests because its interests are averse to OSAT's interests. While Defendant willingly agreed to have its own laws declared unconstitutional, OSAT seeks to defend the laws. Further, because Defendant jointly requested the final judgment entered by this Court, it is not going to appeal. Accordingly, OSAT's interests are not adequately represented by the existing parties.

Because OSAT has met each requirement under Fed. R. Civ. P. 24(a), OSAT respectfully requests that the Court grant intervention as of right.

### B. Permissive Intervention

Should the Court determine that OSAT is not entitled to intervene as a matter of right, OSAT asks the Court to exercise its discretion to allow permissive intervention under Fed. R. Civ.

P. 24(b). To intervene permissively, a proposed-intervenor must establish that "(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights." *Forest Guardians*, 2004 WL 3426413, at *10–11.

OSAT's claims and defenses share many questions of law and fact with the action as a whole. OSAT seeks to file an appeal to seek review of the Court's final consent judgment invalidating the challenged provisions. Movant's interests in this action directly align with the ultimate question of law the Court must answer in this case. Further, intervention in this context will not unduly delay or prejudice the adjudication of the Parties' rights because the intervention is for purposes of appeal. Therefore, any prejudice claimed by the Parties pertaining to lengthening the case is of their own creation by hurrying forward a consent judgment without providing an opportunity for consideration of the interests of third parties, such as OSAT members.

Accordingly, OSAT requests that the Court allow permissive intervention under Fed. R. Civ. P. 24(b).

### IV.   CONCLUSION

For the foregoing reasons, OSAT respectfully requests that the Court grant its motion to intervene as of right, or, in the alternative, grant permissive intervention.

Dated: October 27, 2025                    Respectfully submitted,

                                                   */s/ Marvin Lizama*
Marvin Lizama (Oklahoma Bar. No. 21266)
**Lizama Law, PLLC**
907 S. Detroit Avenue, Suite 1330
Tulsa, OK 74120
marvin@lizamalaw.com
918-850-2048

        /s/ Fernando Nunez
Thomas A. Saenz (California Bar No. 159430)+
Fernando Nuñez (California Bar No. 327390)*
Luis L. Lozada (California Bar No. 344357)*
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
   fnunez@maldef.org
   llozada@maldef.org

*Attorneys for Oklahoma Students for Affordable Tuition*

+ *Admission pending*
\**Pro Hac Vice Forthcoming*

13