UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff,*<br><br>    v.<br><br>STATE OF OKLAHOMA,<br><br>        *Defendant.* | No.  25-cv-265-RAW-DES |

### **PLAINTIFF'S OPPOSITION TO OKLAHOMA STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE**

Nothing about this now concluded case warrants reopening litigation to entertain the futile claims of proposed intervenors. The Court has already entered the legally correct judgment, Dkt. Nos. 22-23, namely, that Oklahoma cannot provide in-state tuition benefits to illegal aliens while not affording the same benefit to non-resident U.S. citizens. Any continued litigation on this issue will squander both court and party resources on a matter already correctly concluded by this Court—not least because the proposed intervenors, in addition to having no basis in law for their objection to this Court's decision, lack Article III standing to enter the litigation in the first place.

Plaintiff's case sought the invalidation of Okla. Stat. tit. 70, § 3242 and Oklahoma State Regents for Higher Education ("OSRHE") Policy § 3.18.6 in its prior iteration[1], contending

---

[1] As a result of this Court's order declaring that Okla. Stat. tit. 70, § 3242 and OSRHE Policy § 3.18.6, as applied to aliens who are not lawfully present in the United States, violated the United States Constitution's Supremacy Clause and are invalid, Dkt. No. 23, OSRHE Policy § 3.18.6, as it existed prior to this litigation, is no longer in effect. *See* Oklahoma State Regents for Higher Education, *Agenda*, 37-38 (Sept. 4, 2025), https://okhighered.org/wp-content/uploads/2025/09/2025-09-04-State-Regents-Meeting-Agenda-Online-Posting.pdf (last visited Dec. 1, 2025). Thus, for clarity, this brief will refer to the policy as it existed before this litigation as "former OSRHE Policy § 3.18.6" since its current iteration reads differently. *See* Oklahoma State Regents for Higher Education, Chapter 3, Academic Affairs Policy § 3.18, 87 (Sept. 4, 2025), https://okhighered.org/wp-content/uploads/2025/09/Chapter-3-2025.pdf (last visited Dec. 1, 2025).

1

that these provisions directly conflict with federal immigration law because they enable illegal aliens to qualify for postsecondary education benefits at public colleges and universities in Oklahoma while excluding U.S. citizens from those benefits. *See* Dkt. No. 2. The Parties in this litigation jointly filed a Motion for Entry of Consent Judgment agreeing that the provisions are preempted, which the Court granted, ordering a permanent injunction of the unconstitutional provisions. Dkt. Nos. 9, 11, 22-23. Despite this, the Oklahoma Students for Affordable Tuition ("OSAT"), an alleged unincorporated association composed of college students without lawful immigration status attending public colleges and universities in Oklahoma, seeks to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a). Dkt. No. 24 at 8[2] (OSAT seeks intervention to "defend the validity of" Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6). In the alternative, OSAT seeks permissive intervention under Federal Rule of Civil Procedure 24(b).

This Court should deny OSAT's motion to intervene for four principal reasons. First, OSAT lacks associational and organizational standing to pursue relief in this matter. Second, OSAT's motion to intervene is legally futile. Third, OSAT does not meet the requirements for intervention as a matter of right. Fourth, permissive intervention is not warranted. Because OSAT presents no grounds that would warrant a different legal outcome, its request should be denied.

## PROCEDURAL HISTORY

Plaintiff United States of America filed its Complaint on August 5, 2025, asserting that Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6 are preempted by federal immigration law, specifically 8 U.S.C. §§ 1621(d), 1623(a). Dkt. No. 2. After discussions amongst the parties and a determination by Defendant that the challenged provisions are preempted by federal law, the parties filed a joint motion on August 5, 2025, requesting that this Court enter an Order and Final Judgment declaring the challenged provisions unconstitutional under the Supremacy Clause and enjoining them. Dkt. No. 9.

---

[2] Citations to page numbers refer to the Electronic Case Filing pagination.

2

On August 7, 2025, Magistrate Judge D. Edward Snow of this Court issued a Report and Recommendation, concluding that Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6 were preempted by federal immigration law. Dkt. No. 11. Magistrate Snow cited to the plain language of Section 1623(a) and noted that it contains an express preemption clause directing that aliens not lawfully present in the United States could not be eligible for postsecondary education benefits based on state residence unless a United States citizen was also eligible without regard to residency. *Id.* at 3. Magistrate Snow also emphasized that "under the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992)) (internal quotation marks omitted). Magistrate Snow thus concluded that Section 1623(a) expressly preempts Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6, which both permitted unlawfully present aliens to qualify for in-state tuition and state-funded scholarships or financial aid based on Oklahoma residency, even though out-of-state United States citizens were not afforded the same benefits. Dkt. No. 11 at 1-3.

On August 29, 2025, this Court adopted the Report and Recommendation, declaring that the challenged Oklahoma provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are unconstitutional and invalid. Dkt. Nos. 22-23. This Court also ordered a permanent injunction on the enforcement of the unlawful provisions. Dkt. No. 23.

On October 27, 2025, almost two months after this Court entered its final order and almost three months after the United States filed its Complaint, OSAT filed the instant Motion to Intervene. Dkt. No. 24.

## LEGAL STANDARD

### I.     Standing

Article III standing is a fundamental requirement for any party, including proposed intervenors, seeking relief in federal court. *United States v. Colorado & E. R.R. Co.*, 882 F.3d 1264, 1269 (10th Cir. 2018). This is because Article III of the United States Constitution limits federal jurisdiction to actual cases and controversies, *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

3

560 (1992), which requires that the plaintiff establish standing to sue, *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *see also Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022). Article III standing specifically requires that a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Laufer*, 22 F.4th at 876 (citing *Lujan*, 504 U.S. at 560-61); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, a party must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560); *Laufer*, 22 F.4th at 876 (citations omitted).

## II. Intervention as of Right

In this circuit, a party seeking intervention as of right under Rule 24(a)(2) must show (1) timeliness; (2) an interest relating to the property or transaction that is the subject of the action; (3) the potential impairment of that interest; and (4) inadequate representation by existing parties. *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1023 (10th Cir. 2024); *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017).

## III. Permissive Intervention

Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015). In exercising its discretion, the Court must also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3); *Tri-State Generation & Transmission Ass'n, Inc.*, 787 F.3d at 1074.

## ARGUMENT

This Court should deny OSAT's motion to intervene because (1) it lacks associational and organizational standing, (2) as a preliminary matter, intervention in this case is legally futile because Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6 are expressly preempted by federal immigration law under 8 U.S.C. §§ 1621(d), 1623(a), and (3) OSAT has failed to

4

demonstrate that the Court should allow it to intervene as of right or (4) as a permissive intervenor.

> **I.      OSAT Lacks Standing to Intervene in this Lawsuit**

OSAT seeks to intervene in this lawsuit to defend the legal validity of Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6. But it must first overcome the hurdle of establishing standing to participate in this litigation. *Colorado & E. R.R. Co.*, 882 F.3d at 1269. OSAT is unable to do so.

> *1. OSAT Lacks Associational Standing to Intervene*

OSAT has failed to demonstrate that any of its members have associational standing to sue. To establish associational standing, OSAT must demonstrate, *inter alia*, that its members "would otherwise have standing to sue in their own right." *N. New Mexico Stockman's Ass'n v. United States Fish & Wildlife Serv.*, 30 F.4th 1210, 1219 (10th Cir. 2022) (citation omitted and internal quotation marks omitted). "When challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545–46 (2016).

OSAT cannot show that the price charged for college tuition is "fairly traceable," to the United States or Defendants in this case, or "likely to be redressed" by a favorable decision in this suit. *Spokeo, Inc.*, 578 U.S. at 338; *Laufer*, 22 F.4th at 876. The colleges and universities that OSAT's members attend are free to reduce tuition rates at any time, such that OSAT's members' fears of "substantial increases of their education costs," Dkt. No. 24 at 11, would not be an issue. The price that such colleges and universities charge is not at all within the control of the parties in this litigation. In fact, if the Court were to rule in a way that favored OSAT, those same colleges and universities are also free to *raise* tuition rates higher, despite a ruling favorable to OSAT, causing OSAT's members to contemplate unenrolling due to lack of affordability. Simply put, OSAT's alleged harm is not "traceable to the challenged conduct of the defendant," nor "likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338. *Laufer*, 22 F.4th at 876. OSAT cannot blame the parties in this suit for their inability to afford what the colleges and universities they chose to attend charge them.

Moreover, and apart from the cost of tuition, it is questionable as to whether a voluntary choice to stop or not enter college courses would constitute an injury: individuals are free to decide what an education is worth to them based on the resources available to them and the importance of the education in their estimation. If a student chooses not to attend college, that is not injury but the result of the individual's judgment as to what is best for them. Even if the considered choices of individuals about college attendance were somehow injurious, such decisions can hardly be said to be traceable to the United States.

Additionally, OSAT's motion to intervene contains no affidavits or any other evidence indicating that any of its members have standing. Dkt. No. 24. OSAT merely asserts vague allegations that some of its undocumented members might not be able to afford the possible increased tuition rates, which could cause these individuals to withdraw from their degree programs at various Oklahoma colleges and universities. Dkt. No. 24 at 11-12; *see also id.* at 7-8 (stating that OSAT is "united for the purpose of advocating for access to affordable higher education in Oklahoma, including maintaining the state's regular tuition rates for Oklahoma students without lawful immigration status."). But the speculative and conjectural nature of OSAT's alleged potential harm, without more, fails to show the requisite injury in fact. *See Wittman*, 578 U.S. at 545–46; *see also Lujan*, 504 U.S. at 561; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact and . . . allegations of possible future injury are not sufficient.") (citations and internal quotation marks omitted). This lack of evidence warrants a denial of OSAT's motion to intervene because it has not sufficiently demonstrated, beyond speculative allegations, that its individual members would have standing.

2. *OSAT Lacks Organizational Standing to Intervene*

Neither can OSAT invoke organizational standing to intervene in this litigation. A party seeking to take advantage of organizational standing would have to show that the organization—in this case, OSAT—has been injured. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). It has not done so here.

First, OSAT does not actually allege that it has suffered any injury. The brief in support of OSAT's motion to intervene merely contains allegations about how its members could

6

potentially be injured because they could be forced to pay increased tuition rates, which in turn could cause them to choose to withdraw from their course studies. *See* Dkt. No. 24 at 11-12. However, OSAT does not actually allege that *it* has suffered, or will suffer, any harm. *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (organizations did not retain standing to challenge regulations absent live dispute over their concrete application).

OSAT's professed goal, which motivates its intention to participate in this lawsuit, is to promote, advocate for, and ensure "access to affordable higher education in Oklahoma, including maintaining regular tuition rates for certain students without lawful immigration status." Dkt. 24 at 10-11. But OSAT makes no allegation regarding how its purpose would be harmed by any adverse decision in this case. OSAT remains free to promote and advocate for its preferred policy outcomes to the exact same extent as before. As the party seeking to invoke the jurisdiction of this Court, OSAT must show that it has standing, which in turn means that it must show that it has suffered some injury. *Lujan*, 504 U.S. at 561. But because it has asserted no injury on its own behalf, any intervention based on a theory of organizational standing fails. Alleged injuries to its members do not suffice for organizational standing. *Coleman*, 455 U.S. at 379.

Second, OSAT lacks standing to defend Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6. Under Oklahoma law, the Oklahoma Attorney General is the designated entity authorized to defend state statutes and any policies that implement them. *See* Okla. Stat. tit. 74, §§ 18b(2)-(3), 18c(B). Specifically, the Oklahoma Attorney General, as "chief law officer of the state" shall "appear for the state and prosecute and defend all actions and proceedings in any of the federal courts in which the state is interested as a party." *Id.* at § 18b(2). The Oklahoma Attorney General shall also "appear in any action in which the interests of the state or the people of the state are at issue . . . and . . . defend in any court . . . any cause or proceeding, civil or criminal, in which the state may be a party or interested." *Id.* at § 18b(3).

Thus, under Oklahoma law, the Oklahoma Attorney General is the exclusive entity authorized to defend the contested state statute and the adopted policy that implements it in this case. *See* Okla. Stat. tit. 74, §§ 18b(2)-(3), 18c(B). The statute at issue in this litigation, Okla. Stat. tit. 70, § 3242, is an Oklahoma statute that concerns eligibility for enrollment, resident

tuition, scholarships, and financial aid at public colleges and universities, including the eligibility of aliens unlawfully present in the United States for those benefits. This statute specifically states that OSRHE "may adopt a policy" that is consistent with Okla. Stat. tit. 70, § 3242. Okla. Stat. tit. 70, § 3242.A. OSRHE eventually implemented former OSRHE Policy § 3.18.6, in accordance with and consistent with Okla. Stat. tit. 70, § 3242. *See* Oklahoma State Regents for Higher Education, *Agenda*, at 37 (stating that prior to this Court's final order and judgment declaring Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6 unconstitutional and unenforceable, "Oklahoma law previously allowed the [OSRHE] to adopt a policy permitting the provision of in-state tuition to undocumented students under limited circumstances as provided in [§ 3242]. OSRHE adopted this policy at Section 3.18.6 of its Policy and Procedures Manual."). Notably, counsel from the Oklahoma Attorney General's Office appeared on behalf of Defendant Oklahoma in this litigation. Dkt. Nos. 6-7.

The Supreme Court has generally observed that "[a] State clearly has a legitimate interest in the continued enforceability of its own statutes." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022) (citation and internal quotation marks omitted). The Supreme Court in *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013), a case involving the issue of whether proponents of a certain state law had legal standing to defend its constitutionality on appeal after the state government declined to do so, stated that it has "never before upheld the standing of a private party to defend the constitutionality of a state statute [on appeal] when state officials have chosen not to." *Hollingsworth v. Perry*, 570 U.S. at 715.

The logic employed by the Supreme Court in *Hollingsworth* should be applied to this case, where the authority to enforce and defend Oklahoma's state statutes, and any OSRHE policies that implement them, lies with the Oklahoma Attorney General who has chosen, in consultation with the client Defendant State of Oklahoma, not to defend the constitutionality of the challenged provisions. In choosing not to defend the challenged provisions because of the obvious constitutional problem doing so would entail, Defendant State of Oklahoma went as far as to join Plaintiff United States in a Joint Motion for Entry of Consent Judgment where both parties agreed that Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6 were preempted by 8 U.S.C. §§ 1621(d), 1623(a). Dkt. No. 9 at ¶ 7. Both Parties also requested that

8

the Court enter a final judgment declaring as much and permanently enjoining said provisions. *Id.* at ¶ 8-9.

This Court should not allow OSAT to assert an amorphous public interest in defense of the challenged preempted provisions. *See generally Hollingsworth*, 570 U.S. at 706 (rejecting an intervenor's claim of standing because its interest in vindicating "the constitutional validity of a generally applicable California law" constituted the kind of "generalized grievance" that "is insufficient to confer standing."); *see also id.* at 713. OSAT's asserted interests amount to nothing more than a legally impermissible value interest in the litigation. Yet, "Article III standing," the Supreme Court has stated, "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Id.* at 707 (internal citations and quotations omitted). Nor can a proposed intervenor "attempt to invoke [the judicially cognizable interest] of someone else" if they do not have an independent interest of their own. *Id.* at 708. Accordingly, OSAT lacks organizational standing to intervene in this case.

## II.    Intervention in this Case is Legally Futile

Moreover, this Court should deny OSAT's motion to intervene because Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6 are, as this Court has found in its Order and Judgment adopting Magistrate Snow's Report and Recommendation, expressly preempted by federal immigration law, rendering intervention legally futile. While the Tenth Circuit has not explicitly adopted a futility exception to intervention, District Courts within this jurisdiction have considered whether a proposed intervenor has stated a legally sufficient claim or defense in determining whether the intervention is proper, and this Court should as well. *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. CIV.A. 07-2418-DJW, 2008 WL 2066993, at *4 (D. Kan. May 14, 2008) ("[The Court holds that it is proper to consider whether it would be futile to allow [the proposed intervenor] to intervene. In doing so, however, the Court recognizes that its inquiry must focus on whether [she] has alleged legally sufficient defenses, and not whether she is likely to prevail on the merits of those defenses."); *Holmes v. Boal*, No. CIV.A. 04-2591-CM, 2005 WL 2122315, at *2 (D. Kan. Aug. 22, 2005) ("The first step in determining whether to permit intervention is to establish the validity of the proposed intervenor's claims. . . . A

9

motion to intervene will thus be denied where the proposed complaint-in-intervention fails on its face to state a cognizable claim.") (citations and internal quotation marks omitted); *Equal Employment Opportunity Commission v. Century I, L. C.*, 142 F.R.D. 494, 496 (D. Kan. 1992) (denying motion to intervene to the extent the employee sought to assert claims for unlawful discharge under 42 U.S.C. § 1981 and the Civil Rights Act of 1991, holding that intervention would be futile, as a cause of action under those statutes was not recognized under the case law within the circuit); *Lucero ex rel. Chavez v. City of Albuquerque*, 140 F.R.D. 455, 457 (D.N.M.1992) ("Intervention . . . presupposes that the applicant has a right to maintain a claim for the relief sought. . . . Obviously, if the proposed complaint-in-intervention does not state a valid claim for relief, the motion must be denied.") (citations and internal quotation marks omitted).[3]

First, as discussed *supra* at Argument § I, OSAT lacks standing to participate in any aspect of this litigation, thus rendering any intervention entirely without effect. Second, the challenged provisions are unequivocably expressly preempted. This Court concluded as much after considering the United States' Complaint and the Parties' Joint Motion for Consent Judgment. Dkt. No. 11 (concluding in a Report and Recommendation that Section 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet

---

[3] Other circuits also employ a futility exception when necessary. *See, e.g.*, *King v. Flower Foods, Inc.*, No. 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023) ("If the intervening party's legal claim fails on the merits under clearly established law or a prior decision in the case, the motion to intervene can be dismissed as futile.") (citation and internal quotation marks omitted); *State Farm Mut. Auto. Ins. Co. ex rel. Holley v. U.S.*, No. 02-1799, 2003 WL 1873089, at *3 (E.D. La. Apr. 10, 2003) (finding the court "bound . . . to conclude that it is appropriate to deny a motion to intervene when the intervenor seeks to raise claims that are time barred") (internal citations omitted); *In re Am. White Cross, Inc.*, 269 B.R. 555, 558 (D. Del. 2001) (upholding bankruptcy court's order denying motion to intervene as futile because proposed claims were without merit); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (upholding district court's denial of motion to intervene on futility grounds); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a) requires intervenors to have a legally sufficient claim); *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 501 (3d Cir. 1982) (holding that "[i]n the circumstances of this case, it would be futile to allow intervention in order to present grounds on appeal which we have already rejected").

certain residency and high school graduation criteria."); Dkt Nos. 22-23 (adopting Report and Recommendation and enjoining Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6).

Under the preemption doctrine, state law must give way to federal law when a federal statute contains an express preemption provision. *Arizona v. United States*, 567 U.S. 387, 399 (2012). When the federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted); *see also Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000) ("Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.").

The federal statute upon which the United States primarily based its lawsuit is unambiguous:

> [A]n alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). The plain language of Section 1623(a) prohibits illegal aliens from being eligible for any postsecondary education benefit, such as reduced tuition, financial aid, or scholarships, on the basis of residence within a state unless a United States citizen is eligible for that benefit as well, regardless of residency.

Okla. Stat., tit. 70, § 3242 allows students to be eligible for reduced resident tuition at an Oklahoma public college or university if the student: 1) graduated from a high school in the state; and 2) resided in the state with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation. *See* Okla. Stat., tit. 70, § 3242.A.[4] Critically, Okla. Stat., tit. 70, § 3242 also states that if such a student has secured

---

[4] *See also* FY 2024-2025 Tuition and Fee Rates, The Oklahoma State System of Higher Education, available at https://okhighered.org/wp-content/uploads/2023/10/tuition-fees-23-24.pdf (last visited Dec. 1, 2025) (reflecting that tuition amounts for residents in Oklahoma postsecondary educational institutions were significantly lower than they were for nonresidents).

admission to and enrolled in an Oklahoma public college or university but cannot present valid documentation of United States nationality or an immigration status, the student remains eligible for reduced resident tuition if the student provides the following: 1) a copy of a true and correct application or petition filed with the U.S. Citizenship and Immigration Services to legalize the student's immigration status; or 2) an affidavit of intent to legalize his or her immigration status at the earliest opportunity the student is eligible to do so. Okla. Stat., tit. 70, § 3242.B.

Notably, Okla. Stat., tit. 70, § 3242 specifically carves out an exception for illegal aliens, enabling them to qualify for reduced resident tuition if they present certain documents. At the same time, under this provision, United States Citizens are not granted any such exception. Okla. Stat., tit. 70, § 3242. Rather, they are excluded from paying reduced resident tuition if they are unable to demonstrate that they graduated from a high school in Oklahoma and that they resided in Oklahoma with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation. *Id.* Consequently, Okla. Stat., tit. 70, § 3242 directly conflicts with Section 1623(a), and as such, is plainly preempted.

With respect to former OSRHE Policy § 3.18.6, Okla. Stat., tit. 70, § 3242 specifically provided that OSRHE, a state constitutionally created coordinating board of control for the numerous public state colleges and universities in Oklahoma,[5] could adopt a policy that was consistent with Okla. Stat., tit. 70, § 3242. Okla. Stat., tit. 70, § 3242.A. Accordingly, OSRHE adopted a policy that established criteria and guidelines for classifying postsecondary students as in-state or out-of-state students for the purpose of assessing tuition rates that tracked the residency requirements language of Okla. Stat., tit. 70, § 3242. *See* Dkt. No. 2, n. 4.[6]

Critically, under former OSRHE Policy, an illegal alien from Oklahoma who met the requirements of Okla. Stat., tit. 70, § 3242 could qualify for out-of-state tuition waivers, financial aid, and scholarships under the conditions that were outlined in the statute. *See*

---

[5] *See* Okla. Const. art. 13-A.
[6] The current version of the policy, which is no longer based on the now unenforceable Okla. Stat., tit. 70, § 3242, can be found at Oklahoma State Regents for Higher Education, Chapter 3, Academic Affairs Policy § 3.18, 85-89 (Sept. 4, 2025), https://okhighered.org/wp-content/uploads/2025/09/Chapter-3-2025.pdf.

Oklahoma State Regents for Higher Education, *Agenda*, at 37-38. While these benefit carveouts existed for illegal aliens, unless a state educational institution grants a waiver of nonresident tuition (for example, as part of a scholarship), Oklahoma denied (and continues to deny) reduced resident tuition rates to U.S. citizens who do not meet Oklahoma's residency requirements. *See* Okla. Stat., tit. 70, § 3226; (Current) OSRHE Policy § 3.18.2.H.[7] Thus, former OSRHE Policy § 3.18.6 also directly conflicts with Section 1623(a), and is preempted. The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk*, stating that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

In addition to the preclusive effect of Section 1623(a), former OSRHE Policy § 3.18.6 is preempted because it tries to do by regulation what Congress has required be done only by statute. The Personal Responsibility and Work Opportunity Act makes certain aliens ineligible for any "State or local public benefit." 8 U.S.C. § 1621(a). Included in the statute's definition of "State or local public benefit" is "any . . . postsecondary education . . . benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government." *Id.* § 1621(c). Reduced resident tuition, scholarships, and financial aid are postsecondary education benefits offered to illegal aliens under former OSRHE Policy § 3.18.6.

While Congress included an exception to Section 1621(a)'s prohibition on a State's provision of postsecondary education benefits to illegal aliens, it may only do is "through the enactment of a state law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). Former OSRHE Policy § 3.18.6 does not meet this requirement. Moreover, even if the policy had been enacted into law, under Section 1623(a), a state may not

---

[7] *See supra* n.6.

offer postsecondary education benefits to illegal aliens if those same benefits are denied to United States citizens from other states. 8 U.S.C. § 1623(a) ("*Notwithstanding any other provision of law*, an alien not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a [United States citizen] is eligible for such a benefit . . . without regard [to residency].") (emphasis added).

Recently, the United States District Court for the Northern District of Texas denied a motion to intervene that addresses the very issue that is the subject of this litigation. *See United States v. Texas*, No. 7:25-cv-00055-O (N.D. Tex. Aug. 15, 2025). There, the court found intervention was futile because, as the United States argues here, Section 1623(a) expressly preempted the challenged in-state tuition statutes, deeming the intervenors' motions futile because they failed to state a claim under Rule 12(b)(6). *Id.* at ECF No. 88 at 6-11. Like the *Texas* court, this Court should deny OSAT's motion to intervene because intervention based on opposition to preemption would be futile. The challenged provisions are expressly preempted by federal immigration law under 8 U.S.C. §§ 1621(d), 1623(a). As such, none of OSAT's defenses and cross claims contained in its proposed Answer, *see* Dkt. No. 24-1, are legally cognizable. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (indicating that a claim or defense in a pleading must be legally cognizable in order to survive a motion to dismiss under Rule 12(b)(6)); *see also Educ. Credit Mgmt. Corp.*, 2008 WL 2066993, at *4; *Holmes*, 2005 WL 2122315, at *2; *Equal Employment Opportunity Commission*, 142 F.R.D. at 496; *Lucero ex rel. Chavez*, 140 F.R.D. at 457. Additionally, as discussed *supra* at Argument § I, OSAT lacks standing to intervene, thus rendering any intervention entirely without effect.

### III.   OSAT Fails to Meet the Requirements for Intervention As of Right

Even if this Court were to determine that OSAT has standing and that its request to intervene is not legally futile, this Court should still deny their motion because OSAT fails to satisfy the prerequisite requirements for intervention as of right.

*1. OSAT's Motion is Untimely*

In determining the timeliness of an application for intervention as of right, Courts in this jurisdiction consider "all of the circumstances." *Zinke*, 877 F.3d at 1164. Three non-exhaustive factors are "particularly important: (1) the length of time since the movants knew

of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id.* (citation and internal quotation marks omitted).

      a. <u>OSAT Waited Too Long To File Its Motion</u>

Plaintiff United States filed this action back on August 5, 2025. Dkt. No. 2. After reasoned consideration of the constitutional issues at stake, Defendant State of Oklahoma decided to jointly file a Motion for Entry of Consent Judgment with Plaintiff on the same day, in which both Parties agreed that Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6 were preempted by 8 U.S.C. §§ 1623, 1621(d). Dkt. No. 9. In that same joint motion, both parties requested the Court to enjoin the provisions. *Id.*

On August 7, 2025, a Magistrate Judge from this Court issued a Report and Recommendation recommending that the Joint Motion for Consent Judgment be granted because the challenged provisions were preempted. Dkt. No. 11.[8] At the end of August, on August 29, 2025, this Court adopted the Magistrate Judge's conclusion that the challenged provisions were preempted and granted the Joint Motion for Consent Judgment, permanently enjoining the unconstitutional provisions at issue in this case. Dkt. Nos. 21-22.

OSAT did not file its motion to intervene until October 27, 2025, almost three months after the United States filed its Complaint and the Parties filed the Joint Motion for Consent Decree, and almost two months after this Court entered its final order in this case. Dkt. No. 24. *See Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) ("Courts are normally reluctant to grant a motion to intervene at a late stage in the proceedings or after entry of judgment."). This is a considerable length of time.

Even assuming the veracity of OSAT's bare and uncorroborated assertion that it became aware of its interest in this case when its members began getting notices from their colleges and universities in late September 2025 concerning increased tuition rates, this still does not adequately explain why OSAT filed its motion to intervene at the very end of October 2025. *Compare* Dkt. No. 23 at 13 *with Sanguine*, 736 F.2d at 1419 (finding that although proposed

---

[8] Notably by this time, there was local media coverage concerning this case. *See* Mecca Thompson, *U.S. Department of Justice Sues OK for Allowing Undocumented Students to Qualify for In-State College Tuition*, KFOR, (Aug. 7, 2025, 6:08PM) https://kfor.com/news/local/u-s-department-of-justice-sues-ok-for-allowing-undocumented-students-to-qualify-for-in-state-college-tuition/.

intervenors filed their motion to intervene more than thirty days after entry of judgment, they submitted an affidavit indicating that they were not aware of their interest until approximately two weeks after entry of judgment leading the court to find that the motion to intervene was timely). For these reasons, the Court should find OSAT's motion to intervene was untimely.

     b. <u>OSAT's Motion is Untimely Because it Would Prejudice the Existing Parties</u>

  OSAT's motion to intervene is also untimely because OSAT's failure to promptly file its motion would now prejudice the Parties in this litigation. *Kane Cnty., Utah*, 928 F.3d at 890–91 ("The timeliness of a motion to intervene is assessed in light of all the circumstances, including . . . prejudice to the existing parties[.]") (citations and internal quotation marks omitted).

  The potential for prejudice against the existing parties is clear. Plaintiff United States filed this suit seeking to permanently enjoin Okla. Stat., tit. 70, § 3242 and former OSRHE Policy § 3.18.6. because they are unconstitutional. Dkt. No. 2. The Oklahoma Attorney General's Office, the entity with the exclusive right to determine whether a state law at issue should be defended, in consultation with its client, the Defendant State of Oklahoma, agreed that these provisions were preempted by 8 U.S.C. §§ 1621(d), 1623(a) after due consideration of the issue; in so doing, Defendant State of Oklahoma joined Plaintiff United States in a Motion for Entry of Consent Judgment requesting that the Court declare the provisions unconstitutional, and that it enjoin the challenged provisions. Dkt. No. at 9 at ¶¶ 7-9.

  OSAT, which has no authority under any law to defend or enforce the regulation, cannot now override these decisions made by the Oklahoma Attorney General's Office, in consultation with Defendant State of Oklahoma, which does have such authority and, after assessing the legality, chose not to defend the challenged provisions. Allowing OSAT to do so now would be in conflict with their decisions, and would prejudice the Parties' considered decision to settle this lawsuit. *Zinke*, 877 F.3d at 1164–65 (finding that motion to intervene was timely only after finding that the intervenors moved to intervene as early as they could and that such intervention would not prejudice the parties).

c. Denial of OSAT's Motion Would Not Prejudice OSAT

Under the third timeliness factor, OSAT would not suffer prejudice if its Motion to Intervene were denied. As previously discussed *supra* at Argument § I, OSAT does not have standing to defend the provisions at issue. As such, OSAT would not be prejudiced if denied intervention. *See San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1174 (10th Cir. 2007) (indicating that if a proposed intervenor lacks standing, it cannot intervene).

*2. OSAT Lacks a Legally Protectable Interest in this Action*

OSAT has the burden to show that it has an interest relating to the property or transaction that is the subject of the action. Fed. R. Civ. P. 24(a); *Kane Cnty., Utah*, 94 F.4th at 1023. Moreover, they must show that this interest is a "direct, substantial, legally protectable interest." *San Juan Cnty.*, 503 F.3d at 1193–94. Similar to the reasons it lacks Article III standing, OSAT fails to satisfy this burden. To the extent OSAT agrees with the policy embodied by the statute and believes the statute is constitutional, that by itself is not a legally protectable interest sufficient to justify intervention. And OSAT identifies no other interest.

The cases that OSAT references in support of its argument that it has an interest in this action due to the potential for economic injury are unavailing. Dkt. No. 24 at 15-16. *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009), involved an action brought by the federal government against certain defendants under federal law to recover cleanup costs and natural resources damages at a certain site. Settlement ensued however, wherein the defendants enjoyed immunity from contribution actions or claims for the site. *Id.* at 1390. The Court held that the intervenors had the requisite interest because they had a statutory right under federal law to seek monetary contribution from responsible parties in relation to the cleanup of hazardous substances, and that right was adversely impacted by the litigation. *Id.* at 1397-98. The Tenth Circuit similarly held that a certain group of trade associations and organized labor groups that had various contracts and businesses that would be impacted by the litigation had the requisite interest in *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1112 (10th Cir. 2002).

These cases differ from the case at bar however, because OSAT does not adequately assert any rights, either statutory or contractual, that entitles them to certain tuition rates at

17

public postsecondary institutions, nor can they. And in any case, any state law that is the basis for any such entitlement, such as the very challenged provisions in this matter, must still give way to federal law when a federal statute contains an express preemption provision. *See Arizona*, 567 U.S. at 399. As discussed *supra* at Argument § II, the plain language of Section 1623(a) and Section 1621(d) makes clear that Okla. Stat. tit. 70, § 3242 and former OSRHE Policy § 3.18.6 are preempted because they directly conflict with federal immigration law. Specifically, they 1) conflict with Section 1623(a)'s prohibition on providing postsecondary education benefits—such as lower tuition rates, financial aid and scholarships—based on residency to aliens not lawfully present in the United States that are not available to all United States citizens regardless of residency, and 2) violates Section 1621(d)'s requirement that a state can only provide eligibility for certain benefits to aliens not lawfully present in the United States through "the enactment of a State law" (not policy) that "affirmatively provides for such eligibility." 8 U.S.C. §§ 1621(d), 1623(a).

For the foregoing reasons, the Court should thus deny OSAT's motion to intervene as of right.

### IV.  OSAT Should be Denied Permissive Intervention

A court may allow permissive intervention upon a timely motion if the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Tri-State Generation & Transmission Ass'n, Inc.*, 787 F.3d at 1074. If the motion is timely and shares at least one common question of law or fact, the court must then consider whether intervention would cause "undue delay or prejudice" to the original parties. Fed. R. Civ. P. 24(b)(3); *Tri-State Generation & Transmission Ass'n, Inc.*, 787 F.3d at 1074.

It is well within this Court's discretion to deny OSAT permissible intervention on OSAT's lack of standing alone. As discussed supra at Argument § I, OSAT wishes to intervene in a case where it lacks standing and any relief because the challenged provisions are preempted by federal law. The court should not grant OSAT permissive intervention relief.

Moreover, as discussed *supra* at Argument § III, granting permissive intervention would greatly prejudice the parties because it is untimely and would disturb the State's ability to

choose not to enforce and defend a statute and its implementing policy they have deemed "is preempted by federal law," Dkt. No. 9 at ¶ 7, as well as the United States' ability to ensure a preempted provision is enjoined.

This case does not turn on factual issues or the development of a record. Instead, it presents a straightforward legal issue that the parties resolved after properly concluding that the federal statute preempted the challenged provisions. OSAT cannot change this legal conclusion by describing sympathetic situations its members might be in. *See United States v. Texas*, No. 7:25-cv-00055-O (N.D. Tex. Aug. 15, 2025) (denying intervention after finding the request was futile because Section 1623(a) expressly preempted the challenged in-state tuition statutes). For all these reasons this Court must deny permissive intervention.

Wherefore, the Court should deny OSAT's motion to intervene.

| | |
|---|---|
| DATED: December 1, 2025 | Respectfully submitted, |
| BRETT A. SHUMATE<br>Assistant Attorney General<br>Office of Immigration Litigation | NICOLE GRANT<br>Senior Litigation Counsel<br>Office of Immigration Litigation |
| YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney General | AYSHA T. IQBAL<br>Trial Attorney<br>Office of Immigration Litigation |
| DREW C. ENSIGN<br>Deputy Assistant Attorney General | LUZ MARIA RESTREPO<br>Trial Attorney<br>Office of Immigration Litigation |
| SEAN SKEDZIELEWSKI<br>Counsel to Assistant Attorney General | By: s/Elianis N. Perez<br>ELIANIS N. PEREZ<br>Assistant Director<br>Office of Immigration Litigation<br>P.O. Box 868<br>Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-9124<br>Fax: (202) 305-7000<br>Email: elianis.perez@usdoj.gov<br><br>*Attorneys for the United States* |