UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>STATE OF OKLAHOMA,<br><br>        Defendant,<br><br>and<br><br>OKLAHOMA STUDENTS FOR AFFORDABLE TUITION,<br><br>        Defendant-Intervenor. | Case No.: 6:25-cv-00265-RAW-DES |

**OKLAHOMA STUDENTS FOR AFFORDABLE TUITION'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE**

Oklahoma Students for Affordable Tuition ("OSAT") submits this reply brief in support of its Motion to Intervene. *See* Dkt. 24.

**I.     INTRODUCTION**

The United States of America and the State of Oklahoma stipulated—on the same day the complaint was filed—to invalidate the challenged legal provisions, stripping OSAT's members of regular tuition rates and subjecting them to substantially higher out-of-state tuition. The parties now seek to seal the courthouse doors to prevent the very individuals harmed by their actions from having their day in court. The Court should reject their invitation to insulate this case from appellate review—a vital safeguard of our legal system intended to ensure that the law is applied correctly and fairly to everyone, regardless of their immigration status.

The parties' oppositions consist of a series of legal and factual distortions. They attempt to impose restrictive standing and futility barriers that ask this Court to improperly resolve this case on the merits without full briefing and argument. The parties also blame OSAT for not intervening sooner in a case that began and ended in less time than a standard briefing cycle, all

1

while failing to provide notice to the students whose tuitions were being drastically hiked. These are inappropriate reasons to deny intervention, and contrary to this Circuit's established approach.

The oppositions present no valid reason to deny intervention in this case and only serve to confirm that OSAT is the only party willing to defend the challenged provisions. It is astonishing that Oklahoma is so aggressively opposed to *any* defense of its decades-old laws, just as it is obvious that the United States wants another unopposed "victory" to continue its campaign of restricting educational benefits for students without lawful immigration status across the country. Rule 24 is designed precisely for this scenario. A proper application of the rule will ensure that those with a real stake in the outcome—such as OSAT's members—have a voice in this case.

## II. ARGUMENT

### A. OSAT Does Not Need to Demonstrate Standing to Intervene as a Defendant

The parties erroneously argue that OSAT's members—the specific group of students targeted by the lawsuit—have not established standing to intervene. *See* Dkts. 43 at 5–9; 44 at 7–11. But neither party cites a single case that requires a *defendant* intervenor to establish standing at the district court level. That is because a defendant does not invoke the jurisdiction of the court and does not seek relief—it defends against the relief sought by the plaintiff. *See Virginia v. Hicks*, 539 U.S. 113, 120 (2003) ("[I]t is the Commonwealth of Virginia, not Hicks, that has invoked the authority of the federal courts . . . ."); *see also Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (defendant intervenor need not demonstrate standing because it did not "entail invoking a court's jurisdiction"); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.") (citation omitted). Here, the United States invoked this Court's jurisdiction when it filed suit to invalidate the challenged provisions. OSAT, as a defendant-intervenor, is not required to demonstrate independent standing or a separate injury-in-fact. OSAT seeks no new relief and asserts no new claims in the context of its defense of the challenged provisions; it merely seeks to participate in the existing litigation for purposes of appeal.

Further, the parties treat standing as separate from the Rule 24 analysis. However, courts have recognized that analyzing standing separately may be an academic endeavor because satisfying Rule 24(a) "will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Sokaogon Chippewa Cmty. V.*

*Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). The Tenth Circuit has signaled its agreement with this view. *See Kane Cnty. v. United States*, 928 F.3d 877, 888 n.14 (10th Cir. 2019) (citations omitted).

Recently, the United States District Court for the Eastern District of Kentucky granted intervention in a case involving nearly identical parties and issues that confirms this principle. *See United States of America v. Beshear et al.*, No. 3:25-cv-00028-GFVT (E.D. Ky. Nov. 19, 2025). The district court held that, "where the proposed intervenor seeks to intervene as a defendant, it need not independently demonstrate Article III standing." *Id.*, Dkt. 38 at 4 (citing *Va. House of Delegates*, 587 U.S. at 663). "Thus, Plaintiff's argument that [movant] may not intervene in this action because it does not have Article III standing is unpersuasive because, as a proposed intervenor-defendant, [movant] is not the party 'invoking' this Court's jurisdiction." *Id.*

To the extent that the parties question OSAT's standing to pursue an appeal, that is premature at this stage and is a question reserved for the Tenth Circuit.[1]

### B. OSAT Has Associational Standing to Defend the Challenged Provisions[2]

Even if independent standing were required, OSAT may establish associational standing if its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to its purpose, and the participation of the individual members is not required.[3] *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (citation omitted). Here, OSAT's members are the targets of the parties' collusion, and are bearing the consequences of the permanent injunction. As stated in its motion, OSAT's members received significant increases in their tuitions as a result of this litigation. *See* Dkt. 24 at 11–12. Thus, they have been harmed by having to pay thousands of dollars more for their college education. On top of the immediate financial harm, OSAT's members have also been harmed by jeopardizing their ability to complete their educational programs. *See id.* (noting that OSAT's members will defer or drop out of their educational programs unless regular tuition is reinstated).[4] OSAT, as an

---

[1] Even if it was appropriate to consider appellate standing at the district court level, OSAT satisfies the appellate standing requirements, as described below.
[2] Neither party challenges OSAT's standing regarding its crossclaims.
[3] OSAT is not seeking organizational standing, so it will not address arguments against that theory.
[4] The parties take issue with OSAT's harm allegations not being in the form of affidavits or other evidence, but Rule 24(a) does not explicitly require evidence. To the contrary, motions to intervene are judged under the liberal pleading standard, and allegations are to be accepted as true. *See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group,* 715 F.2d 1256, 1258 (7th Cir. 1983) (in

association that promotes and advocates for affordable higher education in Oklahoma, seeks to protect its members from increased tuition. *See* Dkt. 24 at 10–11. Finally, participation of the individual members is not required here because this case presents a pure question of law.

The United States attempts to absolve the parties from the harms inflicted on OSAT's members by placing the blame on public colleges and universities in Oklahoma and portraying the harm as an affordability issue that OSAT's members have chosen to undertake. *See* Dkt. 43 at 5–6. That is a disingenuous argument that would eviscerate standing for a wide range of common claims for economic damages, including most contract claims. Further, the same Fifth Circuit case that the United States heavily relies upon to support its attacks on state tuition schemes previously rejected the United States' argument. In *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304 (5th Cir. 2023), the Fifth Circuit held that a group of students who paid out-of-state tuition had standing to challenge Texas laws that denied them regular tuition even though—unlike OSAT's members—those students never before qualified for regular tuition. As the Fifth Circuit stated, "the students are handing over money that . . . they would happily retain." *Id.* at 310; *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("[P]laintiffs spent money that, absent defendants' actions, they would not have spent. . . . This is a quintessential injury-in-fact."). And even "[a] dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (Kavanaugh, J.).

The harm is more pronounced in this case. The United States' lawsuit ruptured the status quo in Oklahoma, which resulted in substantially increased tuition costs for OSAT's members. OSAT's members relied on the legislated promise that they would pay regular tuition rates when they decided to attend college in Oklahoma. This lawsuit and resulting permanent injunction now prohibit colleges from offering regular tuition rates to OSAT's members. Thus, OSAT's members have to pay higher tuition or drop out.[5] That is a direct financial and educational harm to OSAT's members caused by this lawsuit. The fact that colleges are the entities that ultimately charge tuition does not change the harm caused by the parties in this case. Indeed, standing analysis does not require that a party's actions are the "very last step in the chain of causation." *Bennett v. Spear*,

---

evaluating motion to intervene, court "must accept as true the non-conclusory allegations of the *motion and cross-complaint*") (emphasis added).

[5] Since OSAT filed its motion, the tuition increase has indeed resulted in withdrawal due to cost and also payment of the higher amount among the membership.

520 U.S. 154, 169 (1997). And that harm can obviously be redressed with a favorable court decision. Namely, the Court can lift the permanent injunction, which will resume the status quo of more than twenty years and allow OSAT's members to continue paying regular tuition rates.

The parties also mischaracterize the holding in *Hollingsworth v. Perry*, 570 U.S. 693 (2013) to preclude intervention in this case. That case is distinguishable and inapposite. First, *Hollingsworth* considered the issue of standing at the appellate level—not the district court level. *See id.* at 705–06. Indeed, the intervenors were allowed to participate at the district court level to defend the law when the state declined to do so. *See id.* at 702. Second, *Hollingsworth* dealt with the appellate standing of intervenors who were merely sponsors of the ballot initiative at issue and thus had no "personal stake" in the litigation that was "distinguishable from the general interest of every citizen of California." *Id.* at 707. Thus, they were allowed to intervene at the district court level, because defendant-intervenors do not need to establish standing, but they had to establish standing when they pursued an appeal. *See id.* at 705–06. Here, OSAT does not seek intervention based on a general interest; OSAT's members have suffered concrete and particularized harm as a result of the litigation and this Court's final judgment.[6]

### C. OSAT Meets the Requirements for Intervention as of Right

Historically, the Tenth Circuit has taken a "liberal approach to intervention [as a matter of right] and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (internal quotation marks omitted). Despite the Tenth Circuit's established approach, the parties urge the Court to improperly apply a heightened standard for allowing intervention in this case.

#### 1. OSAT Filed the Motion to Intervene as Soon as Practicable

The parties unreasonably blame OSAT for not filing a motion to intervene before the Court entered consent judgment. But the circumstances of this case demonstrate the absurdity of that position. The case went from filing to final judgment in a mere 25 days. That is less time than it takes to fully brief a motion in the Eastern District of Oklahoma. *See* Local Civil Rule 7.1. So even had OSAT filed a motion on day one, the Court would have had to rule before the motion

---

[6] The parties rely on dicta from *Hollingsworth* that the Supreme Court has never before upheld "the standing of a private party to defend the constitutionality of a statute when state officials have chosen not to." 570 U.S. at 715. However, that statement must similarly be viewed in the context of that case, which concerned an appeal by a private party with only generalized grievances.

5

could be heard in order to meet the fast pace requested by the parties. It is absurd to suggest OSAT should have intervened before judgment when the case's lifespan was shorter than a standard briefing cycle. There was also no need to accelerate the case in this fashion, and it only served to make it more difficult for affected third parties to seek intervention.

On top of rushing to judgment, the parties did not do anything to provide adequate notice to affected parties, such as OSAT's members.[7] This is particularly egregious in this case because OSAT's members are college students who cannot reasonably be expected to monitor court dockets to learn about cases that may affect their interests. Such an expectation would be inconsistent with the fundamental principles of due process and the adversarial legal system.

OSAT moved to intervene promptly after its members received notices from their colleges about tuition increases in or around late September 2025. *See* Dkt. 24 at 13. OSAT then had to, among other things, search for counsel that specialized in this area, retain counsel, confer with OSAT members, and put together a motion to intervene. Less than one month to do that is not unreasonable and cannot be construed as undue delay. Again, OSATs members are college students focused on finishing their degrees; they are not sophisticated parties with knowledge of the complex legal processes to intervene in a federal lawsuit brought by the United States against a state. And contrary to Oklahoma's apparent contention, the fact that OSAT's counsel may have known about the lawsuit does not mean that OSAT knew about it. *See* Dkt. 44 at 13.

Ultimately, the mere existence of a delay does not make a motion to intervene untimely. *See Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir. 2010). The circumstances of the delay must be taken into account, "including the length of time since the applicant *knew* of his interest in the case." *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (emphasis added). Here, the short period between OSAT's discovery of its interest in the case and the filing of the motion to intervene strongly support timeliness.

### 2. The Prejudice Inquiries Favor Intervention

The inquiry for prejudice "measures prejudice caused by the intervenors' delay—not the intervention itself." *Utah Ass'n of Ctys.*, 255 F.3d at 1251 (internal quotations and citation omitted). Despite this directive from the Tenth Circuit, the parties focus on the alleged prejudice OSAT's intervention will have on upsetting their collusive efforts to invalidate duly enacted state

---

[7] The United States only cites to a single news article covering the lawsuit. *See* Dkt. 43 at 15 n.8.

6

law. That is not a timeliness prejudice; that is a result of intervention itself. Indeed, the parties may prefer to insulate their favorable order and final judgment from appellate review, but that is not a valid basis for denying intervention. OSAT filed its motion to intervene before the deadline to file a notice of appeal and filed a timely protective notice of appeal with the Tenth Circuit. *See* Dkt. 28. That is within the standard timeline of a case and the only prejudice the parties can claim is one produced by the litigation process itself. But appellate review is a vital component of the justice system and should not be so easily evaded or regarded as a form of prejudice due to intervention.

On the other hand, OSAT will be significantly prejudiced if the Court denies intervention. Because the Court has declared the challenged provisions unconstitutional and permanently enjoined Oklahoma from enforcing them, OSAT has already suffered injury—and will continue to suffer injury unless it can obtain relief. No other party filed a notice of appeal, which means that the Court's Order will remain in place permanently absent OSAT's intervention for purposes of appeal. Finally, the unusual circumstances of this case—a same-day consent judgment invalidating longstanding state laws—support a conclusion of timeliness.

### 3. OSAT Has a Strong Interest in This Action and Disposition of the Case Will Impair OSAT's Interest

The parties do not present any cogent arguments that OSAT does not have a strong interest that has been impaired by the litigation. They mostly repackage their standing and futility arguments, which OSAT addresses in other sections of this reply. OSAT addresses two other arguments here. First, the parties present a circular argument concluding that OSAT has no interest in receiving regular tuition rates because the challenged provisions are preempted. *See* Dkts. 43 at 17–18; 44 at 14–15. But whether the challenged provisions are preempted is the very issue OSAT seeks to litigate. The parties cannot rely on their own uncontested conclusion that the challenged provisions are invalid to deny OSAT the opportunity to demonstrate otherwise. It should be uncontested that OSAT, whose members are the beneficiaries of the challenged provisions, has a strong interest in this action. The parties' refusal to concede this point is evidence of their concerted effort to shield their consent judgment from any meaningful adversarial testing and from appellate review.

Second, Oklahoma's argument that OSAT does not have a legally protected interest in the action because its members are students without lawful immigration status is so absurd it almost

warrants no reply. The Supreme Court has made clear that people "whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law" and the ability to protect their interests. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a person] enters the country, the legal circumstances changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("The Fifth Amendment . . . protects every [person] from deprivation of life, liberty, or property without due process of law . . . [e]ven one whose presence in this country is unlawful, involuntary, or transitory . . . .").

As the court in Kentucky recently concluded, where an association's members receive regular tuition under a state law and that law is held unconstitutional, the members "would necessarily be adversely impacted." *Beshear, et al.*, No. 3:25-cv-00028-GFVT, Dkt. 38 at 14; *see also Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015) (intervenors have interest because they were beneficiaries of challenged law).[8]

### 4. Oklahoma Does Not Represent OSAT's Interests

Oklahoma failed to represent the interests of OSAT when it joined the United States in asking this Court for a consent judgment that stripped OSAT's members of regular tuition rates. OSAT seeks to defend the constitutionality of the challenged provisions to reinstate regular tuition rates for its members. As a result, Oklahoma cannot serve as an adequate representative. Indeed, the Tenth Circuit has concluded that when an intervenor's interest differs from the government entity's interest, the presumption of adequate representation is rebutted. *See Kane Cnty.*, 928 F.3d at 892 (collecting cases). Further, Oklahoma's hostile approach regarding OSAT's members is enough to conclude that it cannot possibly be an adequate representative. *See* Dkt. 44 at 9 (positing that OSAT's members do not have legally protected interests because of their immigration status).

Both parties also seem to believe that Oklahoma's Attorney General has the *exclusive* right to defend Oklahoma state laws and that OSAT cannot act on behalf of the state. They are wrong. Although Oklahoma law authorizes the Oklahoma Attorney General to defend state laws, it is not the only party that may do so, especially when the intervening party suffers a concrete and particularized harm. *See, e.g., Beshear, et al.*, No. 3:25-cv-00028-GFVT, Dkt. 38 at 6–7. Further,

---

[8] Oklahoma's assertions regarding entitlements are inapposite because it discusses due process, not intervention impairment. *See* Dkt. 44 at 14.

OSAT is not seeking to step into the shoes of the state as a sovereign entity, it is only stepping in as a defendant in this case because the state decided to abandon its own laws.

Accordingly, OSAT has met the minimal burden to establish that its interests are not adequately represented by the existing parties.

### D. Permissive Intervention is Warranted

The parties only present cursory arguments against permissive intervention that are based on their standing and prejudice arguments. *See* Dkts. 43 at 18–19; 44 at 18–19. Those arguments are wrong for the reasons stated above. *See supra* Sections II.A–B (standing), C.3 (prejudice). Accordingly, OSAT respectfully asks the Court to exercise its discretion to allow permissive intervention under Fed. R. Civ. P. 24(b) so that OSAT may have its day in court before its members are permanently stripped of the regular tuition rates they relied on when they decided to attend college in Oklahoma.

### E. Futility is Not a Recognized Exception to Rule 24's Liberal Application

The parties do not cite a single decision from the Tenth Circuit or even a case in this district that recognizes futility as a basis to deny a motion to intervene. In fact, the United States concedes that the Tenth Circuit has never endorsed a futility exception to intervention. *See* Dkt. 43 at 9. That is because Rule 24 does not impose a likelihood-to-succeed-on-the-merits requirement. Instead, courts assess whether an intervenor alleges "a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *In re Merill Lynch & Co., Rsch. Reps. Sec. Litig.*, No. 02-cv-8472 (JFK), 2008 WL 2594819, at *5 (S.D.N.Y June 26, 2008) (quoting *Williams v. Humbert Ltd. W & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988)). This is consistent with established circuit precedent in favor of granting intervention. *See Zinke*, 877 F.3d at 1164 (discussing Tenth Circuit has historically taken a "liberal approach to intervention [as a matter of right] and thus favors the granting of motions to intervene.") (internal quotation marks omitted).

The cases the parties cite reveal how narrowly courts in other jurisdictions have construed the issue. For example, the court in *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. CIV.A. 07-2418-DJW, 2008 WL 2066993 (D. Kan. May 14, 2008), allowed intervention and explicitly stated that its inquiry was focused on the legal sufficiency of the defenses—"not whether she is likely to prevail on the merits of those defenses." *Id.* at *4. The cases denying intervention based on futility involved claims that were facially defective, such as being time-barred or not recognized in the

circuit. *See, e.g., Holmes v. Boal*, No. CIV.A. 04-2591-CM, 2005 WL 2122315, at *2 (D. Kan. Aug. 22, 2005) (time-barred); *Equal Employment Opportunity Commission v. Century I, L. C.*, 142 F.R.D. 494, 496 (D. Kan. 1992) (claims not recognized in circuit).

Wholly distinct from those cases, the legal sufficiency of OSAT's defenses are not facially defective. The parties argue that the legal issues are "straightforward" and that OSAT could not possibly have a meritorious argument to the contrary.[9] But the parties rely on their own interpretation of the law, not any binding authority compelling their conclusion. Indeed, similar issues are currently being vigorously litigated across the country and there has been no Circuit decision on the specific issue raised here. The parties shield themselves with the Court's Order, but the parties do not acknowledge that they provided the Court with deficient briefing instead of the robust adversarial briefing required to allow the Court to fully consider the issues. For example, the parties did not brief the Court on important statutory-construction principles or the potential unconstitutionality of federal statutes at issue.

Oklahoma attempts to argue the Tenth Amendment issue, but that is improper in a response to a motion to intervene because it does not allow OSAT to properly brief the issue. It is also improper in a motion to intervene for purposes of appeal because it is asking this Court to resolve an issue that will be before the Tenth Circuit. Finally, Oklahoma's arguments regarding the futility of OSAT's crossclaims are premature at this point and do not preclude intervention. The crossclaims arise out of the transaction or occurrence that is the subject matter of the original action, which is all that is required by Fed. R. Civ. P. 13(g).

### III. CONCLUSION

For the foregoing reasons, OSAT respectfully requests that the Court grant its motion to intervene.

Dated: December 15, 2025              Respectfully submitted,

                                       */s/ Fernando Nuñez*
                                       Thomas A. Saenz (California Bar No. 159430)*
                                       Fernando Nuñez (California Bar No. 327390)+
                                       Luis L. Lozada (California Bar No. 344357)+
                                       **MEXICAN AMERICAN LEGAL DEFENSE**

---

[9] The parties also argue that intervention is futile based on their argument regarding OSAT's standing. *See* Dkts. 43 at 10; 44 at 19. They are wrong for the reasons stated above. *See supra* Sections II.A–B.

AND EDUCATIONAL FUND
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
fnunez@maldef.org
llozada@maldef.org

Marvin Lizama (Oklahoma Bar. No. 21266)
**Lizama Law, PLLC**
907 S. Detroit Avenue, Suite 1330
Tulsa, OK 74120

*Attorneys for Oklahoma Students for Affordable Tuition*

*\*Admission Pending*
*+Pro hac vice granted*